24-3132-cv
*Van v. Bright Health Grp., Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of November, two thousand twenty-five.

PRESENT:
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

WINSTON VAN,

> *Lead-Plaintiff-Appellant*,

VICTORINO MARQUEZ, Individually
and On Behalf of All Others Similarly Situated,

> *Plaintiff*,

v.                                                24-3132-cv

BRIGHT HEALTH GROUP, INC., G. MIKE
MIKAN, CATHERINE R. SMITH, JEFFREY J.
SCHERMAN, ROBERT J. SHEEHY, KEDRICK D.
ADKINS, JR., NAOMI ALLEN, JEFFREY FOLICK,
LINDA GOODEN, JEFFERY R. IMMELT,
MANUEL KADRE, MOHAMAD MAKHZOUMI,
ADAIR NEWHALL, J.P. MORGAN SECURITIES
LLC, GOLDMAN SACHS & CO. LLC, MORGAN
STANLEY & CO. LLC, BARCLAYS CAPITAL INC.,
STEPHEN KRAUS, BOFA SECURITIES, INC.,

CITIGROUP GLOBAL MARKETS INC., PIPER
SANDLER & CO., NOMURA SECURITIES
INTERNATIONAL, INC. AND RBC CAPITAL
MARKETS, LLC,

*Defendants-Appellees*.

_____

| | |
|---|---|
| FOR LEAD-PLAINTIFF-APPELLANT: | ALFRED L. FATALE III (Charles Wood, *on the brief*), Labaton Keller Sucharow LLP, New York, New York. |
| FOR DEFENDANTS-APPELLEES: | GEORGE S. WANG (Anthony C. Piccirillo, Patrick K. Barry, *on the brief*), Simpson Thacher & Bartlett LLP, New York, New York, *for Defendants-Appellees Bright Health Group, Inc., G. Mike Mikan, Catherine R. Smith, Jeffrey J. Scherman, Robert J. Sheehy, Kedrick D. Adkins, Jr., Naomi Allen, Jeffrey Folick, Linda Gooden, Jeffery R. Immelt, Manuel Kadre, Mohamad Makhzoumi, and Adair Newhall.* |
| | Susan L. Saltzstein (Jeffrey S. Geier, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, *for Defendants-Appellees J.P. Morgan Securities LLC, Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., Stephen Kraus, BofA Securities, Inc., Citigroup Global Markets Inc., Piper Sandler & Co., Nomura Securities International, Inc., and RBC Capital Markets, LLC.* |

Appeal from a judgment of the United States District Court for the Eastern District of New York (LaShann DeArcy Hall, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on November 1, 2024, is **VACATED**

and the case is **REMANDED** for further proceedings consistent with this summary order.

Lead Plaintiff-Appellant Winston Van, individually and on behalf of a class of similarly situated persons and entities, appeals from the district court's dismissal of his amended complaint (the "Complaint") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

Van brought claims against Defendant-Appellee Bright Health Group, Inc. ("BHG" or the "Company"), a healthcare company, certain of its executives, the BHG Board of Directors, and the underwriters who assisted with BHG's initial public offering ("IPO") (collectively, "Defendants"), pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as well as Securities Exchange Commission (the "SEC") Rule 10b-5, codified at 17 C.F.R. § 240.10b-5. The Complaint alleges that the Registration Statement and Prospectus (the "Offering Documents") filed with the SEC, in connection with BHG's June 2021 IPO, as well as certain subsequent statements by the Company and its executives, were false and misleading. More specifically, the Complaint focuses on two sets of alleged misstatements and omissions in BHG's Offering Documents: (1) descriptions of certain risks as potential even though such risks had already materialized prior to the IPO (the "Risk Factor Misstatements"); and (2) positive statements regarding the current strength of BHG's business operations that were false and misleading based on then-existing and material operational challenges (the "Affirmative Misstatements"). Both sets of alleged misstatements and omissions are supported by the same core of alleged factual predicates—namely, the failure to accurately report, *inter alia*, (1) "a massive backlog of medical claims due

to systematic operational deficiencies at the Company" that impaired visibility into its patient populations and hindered its ability to predict costs, (2) the Company's ongoing and inadequate handling of COVID-19-related impacts, and (3) challenges associated with the Company's rapid growth, all of which resulted in the Company's inability to accurately predict costs and its financial and operational health. App'x at 67–68; *see also id.* at 79–81, 93–94. The district court dismissed all of the claims, determining, *inter alia*, that the Complaint had not plausibly alleged any misrepresentations or omissions of material fact under the Securities Act, Exchange Act, or Section 10(b). *See generally Marquez v. Bright Health Grp., Inc.*, 755 F. Supp. 3d 266 (E.D.N.Y. 2024). On appeal, Van challenges only the dismissal of the Securities Act claims.

This Court "review[s] *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To state a claim under Section 11 of the Securities Act, a plaintiff must plead that "the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358–59 (2d Cir. 2010) (quoting 15 U.S.C. § 77k(a)). Similarly, a Section 12(a)(2) claim requires pleading that the

4

relevant securities were sold using prospectuses or oral communications "which include[d] an untrue statement of a material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77*l*(a)(2). Section 15, in turn, creates liability for individuals or entities that "control[] any person liable" under Sections 11 or 12. 15 U.S.C. § 77*o*(a).

Unlike the Exchange Act, the Securities Act imposes "absolute liability" for violations and does not require "any particular state of mind or scienter" as long as a material misrepresentation or omission is established. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 172 (2d Cir. 2021) (internal quotation marks omitted). The Rule 8 notice pleading standard applies to Securities Act claims where the complaint "alleges that [the defendant] acted negligently in preparing its Registration Statement and Prospectus." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). However, if the allegations underlying a Securities Act claim are "premised on allegations of fraud," "the heightened pleading standard of Rule 9(b) applies." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).

Here, the Complaint contains claims pursuant to both the Securities Act and Exchange Act. However, in advancing the Securities Act claims, the Complaint explicitly disclaims fraud, and instead alleges, *inter alia*, that "the Underwriter Defendants were *negligent* in not knowing of the Company's undisclosed existing problems and plans" and "[t]he Registration Statement was *negligently* prepared." App'x at 66–67 (emphases added). Likewise, although the allegations supporting the Securities Act claims are repeated as part of the Exchange Act claims, the Securities Act and Exchange Act claims are described separately, with the Exchange Act claims containing additional alleged misrepresentations. Thus, the district court correctly determined that the

5

plausibility standard under Rule 8, rather than the heightened pleading standard under Rule 9(b), applies to the Securities Act claims in this case. *See Litwin*, 634 F.3d at 715 (applying Rule 8 to Securities Act claims based on negligence); *see also Pappas v. Qutoutiao Inc.*, No. 23-1233, 2024 WL 4588491, at *1 (2d Cir. Oct. 28, 2024) (summary order) ("Nothing in Rule 9 or in this Court's prior decision in *Rombach* forecloses pleading Section 10(b) fraud and Section 11 negligence as alternatives with the former claim to be governed by Rule 9(b) and the latter by Rule 8."). However, as set forth below, we conclude that the district court erred in dismissing the Securities Act claims based upon its determination that the Complaint did not contain sufficient allegations to plausibly support an inference that the Offering Documents contained false and misleading statements when made and that were knowable to Defendants.

To be sure, as the district court noted, "the Amended Complaint includes allegations that BHG disclosed risks associated with BHG's ability to set appropriate premiums, manage its costs and growth, evaluate the business, and predict future prospects," and "attributes these risks to BHG's limited operating history, the COVID-19 pandemic, the accuracy of BHG's data, the management of risk adjustment programs, and the performance of third-party vendors." *Marquez*, 755 F. Supp. 3d at 278 (citations omitted); *see In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) (noting that, "[w]hen a registration statement warns of the exact risk that later materialized, a [s]ection 11 claim will not lie as a matter of law" (alterations in original) (internal quotation marks and citation omitted)). However, we have emphasized that "cautionary words about future risk cannot insulate from liability [a] failure to disclose that the risk has, in fact, materialized in the past and is virtually certain to materialize again." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85 (2d Cir. 2021); *accord Rombach*, 355 F.3d at 173 ("Cautionary words

about future risk cannot insulate from liability the failure to disclose that the risk has transpired.").

Here, as noted above, the Offering Documents cautioned potential IPO investors that the risks associated with an inability to manage costs or accurately assess risk could potentially impact BHG's business in the future. However, the Complaint asserts, *inter alia*, that those potential risks identified in the Offering Documents had already materialized prior to the IPO in June 2021. The Complaint relies heavily on alleged statements by former BHG employees to support the claim that the Company had a substantial backlog of claims in 2020 and early 2021, due to a company-wide failure to maintain accurate provider directories. In particular, the Complaint describes, in detail, the statements of a former employee ("FE-1"), who was a "Market Executive Director" "responsible for managing the overall operations for Bright Health's insurance product segment . . . in Arizona" from December 2019 to July 2021. App'x at 53. FE-1 stated that BHG had issues maintaining provider directories, which led to claims backlogs that impaired the Company's visibility into its patient population and therefore its finances. He also indicated that "claims issues were present in . . . established markets as well as the new markets" and "not limited to Arizona." *Id*. at 54, 105. The statements of two other former employees—namely, a manager who "oversaw a team of nurses and social workers who performed case management services for [BHG's] members" from February 2021 through August 2021, App'x at 61, and a manager for Clinical Market Performance with "an oversight function" in North and South Carolina who functioned as a liaison between BHG's individual patients and its medical care partners from April 2021 through September 2021, App'x at 63—corroborated FE-1's statements regarding the increase in delinquent payment complaints from providers leading up to the IPO due to a lack of infrastructure at BHG.

The district court concluded that these allegations by the three former employees failed to support the Securities Act claims because the former employees lacked "direct knowledge of BHG's company-wide practices" and "the allegations attributable to these witnesses do not support an inference that the wide-spread operational issues in the Amended Complaint existed at the time of the IPO in June 2021." *Marquez¸* 755 F. Supp. 3d at 279. We respectfully disagree. As in *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group*, 709 F.3d 109 (2d Cir. 2013), the descriptions of the former BHG employees "support the probability that [they] would have the alleged knowledge of [the relevant] practices" and "the statements relayed in the [Complaint] provide no basis for believing that factors unique to the relevant offices, rather than company-wide practices, resulted in the [operational problems] that these employees allegedly experienced," *id.* at 124 (internal quotation marks and citations omitted). Indeed, the Complaint contains specific allegations from FE-1 supporting the reasonable inference that the operational issues that he identified were widespread at BHG prior to the IPO. For example, the Complaint alleges that FE-1 "recalled receiving an email in approximately May 2021 from a Claims employee in which the backlog of claims was detailed, including the amounts owed to providers and how far behind the company was in processing those claims," with the email "indicat[ing] a backlog of over 180 days to process claims." App'x at 54–55. FE-1 noted that "the email was widely distributed, including to all sales managers at Bright Health." *Id.* at 55. The Complaint further explained how FE-1 knew that the operational issues were widespread at the time of the IPO based upon meetings that he personally attended, including "all-hands" meetings beginning in February 2021, with BHG's executive leadership:

FE-1 further confirmed that Bright Health's executive leadership, including CEO

8

Mike Mikan and CFO Cathy Smith, were aware of these issues prior to the IPO in June 2021. He indicated that these problems existed in 2020 and only became worse as the company grew. He indicated that there were several all-hands meetings in which the issues with the directories and claims backlog were acknowledged and discussed by Mikan and Smith, along with assurances that management was working to fix the problems, although no specific steps to fix the problems were detailed at these meetings. He indicated that, beginning in approximately February 2021, there were special all-hands meetings to discuss the claims backlog problem.

*Id*. FE-1 also indicated "that [BHG] created what it called 'war rooms,' or executive staff working groups, to address specific issues, and [that] a war room had been created to address the claims backlog problem." *Id*. Furthermore, FE-1 provided a detailed explanation as to how systemic infrastructure problems caused the company-wide claims backlog and how it affected BHG's ability to accurately calculate its medical loss ratio. On the latter issue, the Complaint alleges that FE-1 personally "observed [BHG] having issues with calculating risk scores by May or June 2020, prior to the IPO," including when "he was involved in a program working with providers to try to calculate risk scores for chronic patients" during the summer of 2020. *Id*. at 57.

In short, "we must draw the reasonable inference that these factual allegations support, namely, that the unnamed employees described widespread practices at [BHG]." *N.J. Carpenters Health Fund*, 709 F.3d at 124 (citation omitted). Given the sufficiency of those allegations, the Complaint plausibly alleges material misrepresentations or omissions in BHG's Offering Documents, such as where they state that operational difficulties "may make it difficult for us to estimate our medical claims liability and may result in the actual cost of claims being higher than we anticipate," or where problems with risk management "can result in lost revenue, which could adversely impact our financial results and cash flows." App'x at 71 (emphases omitted). The Complaint alleges that those issues were already known, and therefore BHG limiting their

9

description to issues that "may" and "can" occur is plausibly a material misrepresentation or omission. Likewise, in combination with these alleged misstatements, the Complaint sufficiently alleges that statements that BHG "demonstrated the ability to successfully manage medical spend," could "quickly scale membership," and had a data management infrastructure that "ensure[d] information is available when and where it is needed" were improperly overstated. *Id.* at 88–91.

Moreover, the Complaint contains additional allegations that buttress the plausibility of the Securities Act claims, including post-IPO statements by BHG executives, which Van asserts demonstrate that the potential risks identified in the Offering Documents had materialized prior to the IPO. For instance, the Complaint focuses on March 2022, when BHG reported its fourth quarter and full year financial results, which revealed net losses three times higher than consensus estimates, and BHG's shares declined nearly 20% in a single day to close at $2.51 per share on March 2, 2022, and continued to fall to $1.79 on March 7, 2022. According to the Complaint, on March 2, 2022, during a conference call that BHG hosted with analysts and investors,

> [CEO] Defendant Mikan admitted that "higher than anticipated growth to start the year and additional growth from the special enrollment period, outpaced our operational and system capabilities," and that when combined with ongoing COVID challenges, this "large group of new members without risk scores combined with scaling up our organizational capabilities and emerging technologies impacted our results into the fourth quarter more significantly than anticipated."

App'x at 100. As to the timing of these operational issues, the Complaint alleges that Mikan stated that "[a]ll of the challenges [BHG] encountered this past year can be attributed to specific areas that were already on our list for improvement, but the growth we experienced exacerbated the gaps in performance." *Id*. at 101 (emphasis omitted). The Complaint further alleges that, in the same conference call, "[CFO] Defendant Smith also revealed that Bright Health's 'significant

10

deterioration . . . was due to specific identifiable issues,' which included 'catching up on claims payments, and resolving resubmitted claims,' which he described as a 'lack of visibility into lagging medical claims on our legacy operational systems, which require manual processing.'" *Id*. (emphasis omitted). With respect to timing, Smith allegedly stated that "2021 [was] the peak of inefficiency" as BHG "consolidate[d] [its] systems and processes." *Id*. at 102. The district court discounted those statements, explaining that they also did "not plausibly allege that the warnings of future risks in BHG's offering documents had already materialized, rendering those disclosures materially misleading." *Marquez*, 755 F. Supp. 3d at 282.

However, in determining plausibility, we do not consider those post-IPO statements in isolation, but rather we examine them in combination with other allegations in the Complaint, including the alleged statements by the three former employees. *See Lynch v. City of New York*, 952 F.3d 67, 82 (2d Cir. 2020) (emphasizing that, in determining whether a plausible claim has been stated, "we view the allegations of the Complaint in combination rather than piecemeal"); *see also Morgan Stanley*, 592 F.3d at 365–66 (explaining that "[w]hen analyzing offering materials for compliance with the securities laws, we review the documents holistically and in their entirety" and must examine the representations "taken together and in context" (internal quotation marks and citation omitted)). The IPO was in June 2021, and the Complaint lays out statements by former employees alleging that the issues existed prior to the IPO, throughout 2021. Smith's statement that "2021 [was] the peak of inefficiency" is in accord with these allegations. App'x at 102. When all of the allegations are accepted as true and all reasonable inferences are drawn in Van's favor, we conclude that the Complaint plausibly alleges that at least some of the risks identified in the Offering Documents had already materialized at the time of the IPO and were knowable to

11

Defendants.  Thus, the district court erred in dismissing the claims under Section 11 and 12.[1]

*         *         *

We have considered the remaining arguments on appeal and conclude that they are without

merit.  Accordingly, we **VACATE** the district court's judgment and **REMAND** the case for further

proceedings consistent with this summary order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[1] Because we conclude that the district court erred in dismissing the Section 11 and 12 claims, we similarly find that it was error to dismiss the Section 15 claims because of the lack of an underlying violation under Section 11 or 12.  *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185–86 (2d Cir. 2011) ("To establish § 15 liability, a plaintiff must show a 'primary violation' of § 11 and control of the primary violator by defendants." (citations omitted)).