(Slip Opinion) OCTOBER TERM, 2019 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## COMCAST CORP. *v.* NATIONAL ASSOCIATION OF AFRICAN AMERICAN-OWNED MEDIA ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 18–1171. Argued November 13, 2019—Decided March 23, 2020

Entertainment Studios Network (ESN), an African-American-owned television-network operator, sought to have cable television conglomerate Comcast Corporation carry its channels. Comcast refused, citing lack of programming demand, bandwidth constraints, and a preference for programming not offered by ESN. ESN and the National Association of African American-Owned Media (collectively, ESN) sued, alleging that Comcast's behavior violated 42 U. S. C. §1981, which guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." The District Court dismissed the complaint for failing plausibly to show that, but for racial animus, Comcast would have contracted with ESN. The Ninth Circuit reversed, holding that ESN needed only to plead facts plausibly showing that race played "some role" in the defendant's decisionmaking process and that, under this standard, ESN had pleaded a viable claim.

*Held*: A §1981 plaintiff bears the burden of showing that the plaintiff's race was a but-for cause of its injury, and that burden remains constant over the life of the lawsuit. Pp. 3–13.

(a) To prevail, a tort plaintiff typically must prove but-for causation. See *University of Tex. Southwestern Medical Center* v. *Nassar,* 570 U. S. 338, 347. Normally, too, the essential elements of a claim remain constant throughout the lawsuit. See, *e.g., Lujan* v. *Defenders of Wildlife,* 504 U. S. 555, 561. ESN suggests that §1981 creates an exception to one or both of these general principles, either because a §1981 plaintiff only bears the burden of showing that race was a "motivating factor" in the defendant's challenged decision or because, even when but-for causation applies at trial, a plausible "motivating factor" showing is all that is necessary to overcome a motion to dismiss at the pleading

stage.  Pp. 3–12.

(1) Several clues, taken collectively, make clear that §1981 follows the usual rules.  The statute's text suggests but-for causation: An ordinary English speaker would not say that a plaintiff did not enjoy the "same right" to make contracts "as is enjoyed by white citizens" if race was not a but-for cause affecting the plaintiff's ability to contract.  Nor does the text suggest that the test should be different in the face of a motion to dismiss.  The larger structure and history of the Civil Rights Act of 1866 provide further clues.  When enacted, §1981 did not provide a private enforcement mechanism for violations.  That right was judicially created, see *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454, 459, but even in that era, the Court usually insisted that the legal elements of implied causes of action be at least as demanding as those found in analogous statutory causes of action.  That rule supplies useful guidance here, where a neighboring section of the 1866 Act uses the terms "on account of" and "by reason of," §2, 14 Stat. 27—phrases often held to indicate but-for causation—and gives no hint that a different rule might apply at different times in the life of a lawsuit.  Another provision provides that in cases not provided for by the Act, the common law shall govern, §3, *ibid.*, which in 1866, usually treated a showing of but-for causation as a prerequisite to a tort suit.  This Court's precedents confirm what the statute's language and history indicate.  *See, e.g., Johnson,* 421 U. S., at 459–460; *Buchanan* v. *Warley,* 245 U. S. 60, 78–79.  Pp. 4–8.

(2) ESN urges applying the "motivating factor" causation test in Title VII of the Civil Rights Act of 1964 to §1981 cases.  But this Court has already twice rejected such efforts in other contexts, see, *e.g., Gross* v. *FBL Financial Services, Inc.*, 557 U. S. 167, and there is no reason to think it would fit any better here.  Moreover, when that test was added to Title VII in the Civil Rights Act of 1991, Congress also amended §1981 without mentioning "motivating factors."  Even if ESN is correct that those amendments clarified that §1981 addresses not just contractual *outcomes* but the whole contracting *process*, its claim that a process-oriented right necessarily pairs with a motivating factor causal standard is mistaken.  The burden-shifting framework of *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792, also supplies no support for the innovations ESN seeks.  Pp. 8–12.

(b) The court of appeals should determine in the first instance how the operative amended complaint in this case fares under the proper standard.  P. 13.

743 Fed. Appx. 106, vacated and remanded.

GORSUCH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, BREYER, ALITO, SOTOMAYOR, KAGAN, and KAVANAUGH,

JJ., joined, and in which GINSBURG, J., joined except for the footnote. GINSBURG, J., filed an opinion concurring in part and concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 18–1171

COMCAST CORPORATION, PETITIONER *v.*
NATIONAL ASSOCIATION OF AFRICAN
AMERICAN-OWNED MEDIA, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 23, 2020]

JUSTICE GORSUCH delivered the opinion of the Court.

Few legal principles are better established than the rule requiring a plaintiff to establish causation. In the law of torts, this usually means a plaintiff must first plead and then prove that its injury would not have occurred "but for" the defendant's unlawful conduct. The plaintiffs before us suggest that 42 U. S. C. §1981 departs from this traditional arrangement. But looking to this particular statute's text and history, we see no evidence of an exception.

I

This case began after negotiations between two media companies failed. African-American entrepreneur Byron Allen owns Entertainment Studios Network (ESN), the operator of seven television networks—Justice Central.TV, Comedy.TV, ES.TV, Pets.TV, Recipe.TV, MyDestination.TV, and Cars.TV. For years, ESN sought to have Comcast, one of the nation's largest cable television conglomerates, carry its channels. But Comcast refused, citing lack of demand for ESN's programming, bandwidth constraints, and its preference for news and sports programming that

ESN didn't offer.

With bargaining at an impasse, ESN sued. Seeking billions in damages, the company alleged that Comcast systematically disfavored "100% African American-owned media companies." ESN didn't dispute that, during negotiations, Comcast had offered legitimate business reasons for refusing to carry its channels. But, ESN contended, these reasons were merely pretextual. To help obscure its true discriminatory intentions and win favor with the Federal Communications Commission, ESN asserted, Comcast paid civil rights groups to advocate publicly on its behalf. As relevant here, ESN alleged that Comcast's behavior violated 42 U. S. C. §1981(a), which guarantees, among other things, "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

Much motions practice followed. Comcast sought to dismiss ESN's complaint, and eventually the district court agreed, holding that ESN's pleading failed to state a claim as a matter of law. The district court twice allowed ESN a chance to remedy its complaint's deficiencies by identifying additional facts to support its case. But each time, the court concluded, ESN's efforts fell short of plausibly showing that, but for racial animus, Comcast would have contracted with ESN. After three rounds of pleadings, motions, and dismissals, the district court decided that further amendments would prove futile and entered a final judgment for Comcast.

The Ninth Circuit reversed. As that court saw it, the district court used the wrong causation standard when assessing ESN's pleadings. A §1981 plaintiff doesn't have to point to facts plausibly showing that racial animus was a "but for" cause of the defendant's conduct. Instead, the Ninth Circuit held, a plaintiff must only plead facts plausibly showing that race played "some role" in the defendant's decisionmaking process. 743 Fed. Appx. 106, 107 (2018);

see also *National Assn. of African American-Owned Media* v. *Charter Communications, Inc.*, 915 F. 3d 617, 626 (CA9 2019) (describing the test as whether "discriminatory intent play[ed] *any* role"). And under this more forgiving causation standard, the court continued, ESN had pleaded a viable claim.

Other circuits dispute the Ninth Circuit's understanding of §1981. Like the district court in this case, for example, the Seventh Circuit has held that "to be actionable, racial prejudice must be a but-for cause . . . of the refusal to transact." *Bachman* v. *St. Monica's Congregation*, 902 F. 2d 1259, 1262–1263 (1990). To resolve the disagreement among the circuits over §1981's causation requirement, we agreed to hear this case. 587 U. S. \_\_\_ (2019).

## II

It is "textbook tort law" that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation. *University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. 338, 347 (2013) (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 265 (5th ed. 1984)). Under this standard, a plaintiff must demonstrate that, but for the defendant's unlawful conduct, its alleged injury would not have occurred. This ancient and simple "but for" common law causation test, we have held, supplies the "default" or "background" rule against which Congress is normally presumed to have legislated when creating its own new causes of action. 570 U. S., at 346–347 (citing *Los Angeles Dept. of Water and Power* v. *Manhart*, 435 U. S. 702, 711 (1978)). That includes when it comes to federal antidiscrimination laws like §1981. See 570 U. S., at 346–347 (Title VII retaliation); *Gross* v. *FBL Financial Services, Inc.*, 557 U. S. 167, 176–177 (2009) (Age Discrimination in Employment Act of 1967).

Normally, too, the essential elements of a claim remain

constant through the life of a lawsuit. What a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial, but the legal elements themselves do not change. So, to determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end. See, *e.g., Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 561 (1992); *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U. S. 336, 346–347 (2005); *Ashcroft* v. *Iqbal*, 556 U. S. 662, 678–679 (2009).

ESN doesn't seriously dispute these general principles. Instead, it suggests §1981 creates an exception to one or both of them. At times, ESN seems to argue that a §1981 plaintiff only bears the burden of showing that race was a "motivating factor" in the defendant's challenged decision, not a but-for cause of its injury. At others, ESN appears to concede that a §1981 plaintiff does have to prove but-for causation at trial, but contends the rules should be different at the pleading stage. According to this version of ESN's argument, a plaintiff should be able to overcome at least a motion to dismiss if it can allege facts plausibly showing that race was a "motivating factor" in the defendant's decision. ESN admits this arrangement would allow some claims to proceed past the pleading stage that are destined to fail later as a matter of law. Still, the company insists, that is what the statute demands.

A

We don't doubt that most rules bear their exceptions. But, taken collectively, clues from the statute's text, its history, and our precedent persuade us that §1981 follows the general rule. Here, a plaintiff bears the burden of showing that race was a but-for cause of its injury. And, while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant.

Congress passed the Civil Rights Act of 1866 in the aftermath of the Civil War to vindicate the rights of former slaves. Section 1 of that statute included the language found codified today in §1981(a), promising that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, [and] give evidence . . . as is enjoyed by white citizens." 42 U. S. C. §1981; Civil Rights Act of 1866, 14 Stat. 27.

While the statute's text does not expressly discuss causation, it is suggestive. The guarantee that each person is entitled to the "same right . . . as is enjoyed by white citizens" directs our attention to the counterfactual—what would have happened if the plaintiff had been white? This focus fits naturally with the ordinary rule that a plaintiff must prove but-for causation. If the defendant would have responded the same way to the plaintiff even if he had been white, an ordinary speaker of English would say that the plaintiff received the "same" legally protected right as a white person. Conversely, if the defendant would have responded differently but for the plaintiff's race, it follows that the plaintiff has not received the same right as a white person. Nor does anything in the statute signal that this test should change its stripes (only) in the face of a motion to dismiss.

The larger structure and history of the Civil Rights Act of 1866 provide further clues. Nothing in the Act specifically authorizes private lawsuits to enforce the right to contract. Instead, this Court created a judicially implied private right of action, definitively doing so for the first time in 1975. See *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 459 (1975); see also *Jett* v. *Dallas Independent School Dist.*, 491 U. S. 701, 720 (1989). That was during a period when the Court often "assumed it to be a proper judicial function to provide such remedies as are necessary to make effective a statute's purpose." *Ziglar* v. *Abbasi*, 582 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 8) (internal quotation marks omitted).

With the passage of time, of course, we have come to appreciate that, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress" and "[r]aising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Alexander* v. *Sandoval*, 532 U. S. 275, 286–287 (2001) (internal quotation marks omitted). Yet, even in the era when this Court routinely implied causes of action, it usually insisted on legal elements at least as demanding as those Congress specified for analogous causes of action actually found in the statutory text. See, *e.g., Blue Chip Stamps* v. *Manor Drug Stores*, 421 U. S. 723, 736 (1975).

That rule supplies useful guidance here. Though Congress did not adopt a private enforcement mechanism for violations of §1981, it did establish criminal sanctions in a neighboring section. That provision permitted the prosecution of anyone who "depriv[es]" a person of "any right" protected by the substantive provisions of the Civil Rights Act of 1866 "on account of" that person's prior "condition of slavery" or "by reason of" that person's "color or race." §2, 14 Stat. 27. To prove a violation, then, the government had to show that the defendant's challenged actions were taken "'on account of'" or "'by reason of'" race—terms we have often held indicate a but-for causation requirement. *Gross*, 557 U. S., at 176–177. Nor did anything in the statute hint that a different and more forgiving rule might apply at one particular stage in the litigation. In light of the causation standard Congress specified for the cause of action it expressly endorsed, it would be more than a little incongruous for us to employ the laxer rules ESN proposes for this Court's judicially implied cause of action.

Other provisions of the 1866 statute offer further guidance. Not only do we generally presume that Congress legislates against the backdrop of the common law. *Nassar*, 570 U. S., at 347. The Civil Rights Act of 1866 made this

background presumption explicit, providing that "in all cases where [the laws of the United States] are not adapted to the object [of carrying the statute into effect] the common law . . . shall . . . govern said courts in the trial and disposition of such cause." §3, 14 Stat. 27. And, while there were exceptions, the common law in 1866 often treated a showing of but-for causation as a prerequisite to a tort suit. See, *e.g.*, *Hayes* v. *Michigan Central R. Co.*, 111 U. S. 228, 241 (1884); Smith, Legal Cause in Actions of Tort, 25 Harv. L. Rev. 103, 108–109 (1911); White, The Emergence and Doctrinal Development of Tort Law, 1870–1930, 11 U. St. Thomas L. J. 463, 464–465 (2014); 1 F. Hilliard, Law of Torts 78–79 (1866); 1 T. Sedgwick, Measure of Damages 199 (9th ed. 1912). Nor did this prerequisite normally wait long to make its appearance; if anything, pleadings standards back then were generally even stricter than they are in federal practice today. See generally, *e.g.,* Lugar, Common Law Pleading Modified versus the Federal Rules, 52 W. Va. L. Rev. 137 (1950).

This Court's precedents confirm all that the statute's language and history indicate. When it first inferred a private cause of action under §1981, this Court described it as "afford[ing] a federal remedy against discrimination . . . *on the basis of* race," language (again) strongly suggestive of a but-for causation standard. *Johnson*, 421 U. S., at 459–460 (emphasis added). Later, in *General Building Contractors Assn., Inc.* v. *Pennsylvania*, 458 U. S. 375 (1982), the Court explained that §1981 was "designed to eradicate blatant deprivations of civil rights," such as where "a private offeror refuse[d] to extend to [an African-American], . . . because he is [an African-American], the same opportunity to enter into contracts as he extends to white offerees." *Id.*, at 388 (emphasis deleted; internal quotation marks omitted). Once more, the Court spoke of §1981 using language—because of—often associated with but-for causation. *Nassar*, 570 U. S., at 350. Nor did anything in these decisions even

gesture toward the possibility that this rule of causation sometimes might be overlooked or modified in the early stages of a case.

This Court's treatment of a neighboring provision, §1982, supplies a final telling piece of evidence. Because §1982 was also first enacted as part of the Civil Rights Act of 1866 and uses nearly identical language as §1981, the Court's "precedents have . . . construed §§1981 and 1982 similarly." *CBOCS West, Inc.* v. *Humphries*, 553 U. S. 442, 447 (2008). Section 1982 guarantees all citizens "the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." And this Court has repeatedly held that a claim arises under §1982 when a citizen is not allowed "to acquire property . . . *because of* color." *Buchanan* v. *Warley*, 245 U. S. 60, 78–79 (1917) (emphasis added); see also *Jones* v. *Alfred H. Mayer Co.*, 392 U. S. 409, 419 (1968); *Runyon* v. *McCrary*, 427 U. S. 160, 170–171 (1976). If a §1982 plaintiff must show the defendant's challenged conduct was "because of" race, it is unclear how we might demand less from a §1981 plaintiff. Certainly ESN offers no compelling reason to read two such similar statutes so differently.

## B

What does ESN offer in reply? The company asks us to draw on, and then innovate with, the "motivating factor" causation test found in Title VII of the Civil Rights Act of 1964. But a critical examination of Title VII's history reveals more than a few reasons to be wary of any invitation to import its motivating factor test into §1981.

This Court first adopted Title VII's motivating factor test in *Price Waterhouse* v. *Hopkins*, 490 U. S. 228 (1989). There, a plurality and two Justices concurring in the judgment held that a Title VII plaintiff doesn't have to prove but-for causation; instead, it's enough to show that discrimination was a motivating factor in the defendant's decision.

*Id.*, at 249–250 (plurality opinion); see also *id.,* at 258–259 (White, J., concurring in judgment); *id.,* at 268–269 (O'Connor, J., concurring in judgment). Once a plaintiff meets this lesser standard, the plurality continued, the defendant may defeat liability by establishing that it would have made the same decision even if it had not taken the plaintiff's race (or other protected trait) into account. In essence, *Price Waterhouse* took the burden of proving but-for causation from the plaintiff and handed it to the defendant as an affirmative defense. *Id.,* at 246.

But this arrangement didn't last long. Congress soon displaced *Price Waterhouse* in favor of its own version of the motivating factor test. In the Civil Rights Act of 1991, Congress provided that a Title VII plaintiff who shows that discrimination was even a motivating factor in the defendant's challenged employment decision is entitled to declaratory and injunctive relief. §107, 105 Stat. 1075. A defendant may still invoke lack of but-for causation as an affirmative defense, but only to stave off damages and reinstatement, not liability in general. 42 U. S. C. §§2000e–2(m), 2000e–5(g)(2)(B); see also *Desert Palace, Inc.* v. *Costa*, 539 U. S. 90, 94–95 (2003).

While this is all well and good for understanding Title VII, it's hard to see what any of it might tell us about §1981. Title VII was enacted in 1964; this Court recognized its motivating factor test in 1989; and Congress replaced that rule with its own version two years later. Meanwhile, §1981 dates back to 1866 and has never said a word about motivating factors. So we have two statutes with two distinct histories, and not a shred of evidence that Congress meant them to incorporate the same causation standard. Worse yet, ESN's fallback position—that we should borrow the motivating factor concept only at the pleadings stage—is foreign even to Title VII practice. To accept ESN's invitation to consult, tinker with, and then engraft a test from a modern statute onto an old one would thus require more

than a little judicial adventurism, and look a good deal more like amending a law than interpreting one.

What's more, it's not as if Congress forgot about §1981 when it adopted the Civil Rights Act of 1991. At the same time that it added the motivating factor test to Title VII, Congress *also* amended §1981. See Civil Rights Act of 1991, §101, 105 Stat. 1072 (adding new subsections (b) and (c) to §1981). But nowhere in its amendments to §1981 did Congress so much as whisper about motivating factors. And where, as here, Congress has simultaneously chosen to amend one statute in one way and a second statute in another way, we normally assume the differences in language imply differences in meaning. *Gross*, 557 U. S., at 174–175; see also *Russello* v. *United States*, 464 U. S. 16, 23 (1983).

Still, ESN tries to salvage something from the 1991 law. It reminds us that one of the amendments to §1981 defined the term "make and enforce contracts" to include "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U. S. C. §1981(b). In all this, ESN asks us to home in on one word, "making." By using this particular word, ESN says, Congress clarified that §1981(a) guarantees not only the right to equivalent contractual *outcomes* (a contract with the same final terms), but also the right to an equivalent contracting *process* (no extra hurdles on the road to securing that contract). And, ESN continues, if the statute addresses the whole contracting process, not just its outcome, a motivating factor causation test fits more logically than the traditional but-for test.

Comcast and the government disagree. As they see it, the Civil Rights Act of 1866 unambiguously protected only outcomes—the right to contract, sue, be a party, and give evidence. When Congress sought to define some of these terms in 1991, it merely repeated one word from the original 1866 Act (make) in a different form (making). No reasonable

reader, Comcast and the government contend, would think that the addition of the present participle form of a verb already in the statute carries such a radically different meaning and so extends §1981 liability in the new directions ESN suggests. And, we are told, the statute's original and continuing focus on contractual *outcomes* (not processes) is more consistent with the traditional but-for test of causation.

This debate, we think, misses the point. Of course, Congress could write an employment discrimination statute to protect only outcomes or to provide broader protection. But, for our purposes today, none of this matters. The difficulty with ESN's argument lies in its mistaken premise that a process-oriented right necessarily pairs with a motivating factor causal standard. The inverse argument—that an outcome-oriented right implies a but-for causation standard—is just as flawed. *Either* causal standard could conceivably apply regardless of the legal right §1981 protects. We need not and do not take any position on whether §1981 as amended protects only outcomes or protects processes too, a question not passed on below or raised in the petition for certiorari. Our point is simply that a §1981 plaintiff first must show that he was deprived of the protected right and then establish causation—and that these two steps are analytically distinct.*

Unable to latch onto either *Price Waterhouse* or the Civil Rights Act of 1991, ESN is left to cast about for some other

———————

*The concurrence proceeds to offer a view on the nature of the right, while correctly noting that the Court reserves the question for another day. We reserve the question because "we are a court of review, not of first view," *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005), and do not normally strain to address issues that are less than fully briefed and that the district and appellate courts have had no opportunity to consider. Such restraint is particularly appropriate here, where addressing the issue is entirely unnecessary to our resolution of the case.

hook to support its arguments about §1981's operation. In a final effort, it asks us to consider the burden-shifting framework of *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792, 802, 804 (1973). Like the motivating factor test, *McDonnell Douglas* is a product of Title VII practice. Under its terms, once a plaintiff establishes a prima facie case of race discrimination through indirect proof, the defendant bears the burden of producing a race-neutral explanation for its action, after which the plaintiff may challenge that explanation as pretextual. *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, 257–258 (1981). This burden shifting, ESN contends, is comparable to the regime it proposes for §1981.

It is nothing of the kind. Whether or not *McDonnell Douglas* has some useful role to play in §1981 cases, it does not mention the motivating factor test, let alone endorse its use only at the pleadings stage. Nor can this come as a surprise: This Court didn't introduce the motivating factor test into Title VII practice until years *after McDonnell Douglas*. For its part, *McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination. See 411 U. S., at 802–805; see also *Furnco Constr. Corp.* v. *Waters*, 438 U. S. 567, 577 (1978); Malamud, The Last Minuet: Disparate Treatment After *Hicks*, 93 Mich. L. Rev. 2229, 2259 (1995). Because *McDonnell Douglas* arose in a context where but-for causation was the undisputed test, it did not address causation standards. So nothing in the opinion involves ESN's preferred standard. Under *McDonnell Douglas*'s terms, too, only the burden of production ever shifts to the defendant, never the burden of persuasion. See *Burdine*, 450 U. S., at 254–255; *Postal Service Bd. of Governors* v. *Aikens*, 460 U. S. 711, 715–716 (1983). So *McDonnell Douglas* can provide no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim.

### III

All the traditional tools of statutory interpretation persuade us that §1981 follows the usual rules, not any exception. To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right. We do not, however, pass on whether ESN's operative amended complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" under the but-for causation standard. *Iqbal*, 556 U. S., at 678–679. The Ninth Circuit has yet to consider that question because it assessed ESN's pleadings under a different and mistaken test. To allow that court the chance to determine the sufficiency of ESN's pleadings under the correct legal rule in the first instance, we vacate the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 18–1171

———————

## COMCAST CORPORATION, PETITIONER *v.* NATIONAL ASSOCIATION OF AFRICAN AMERICAN-OWNED MEDIA, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 23, 2020]

JUSTICE GINSBURG, concurring in part and concurring in the judgment.

I join the Court's opinion requiring a plaintiff who sues under 42 U. S. C. §1981 to plead and prove race was a but-for cause of her injury.\*  In support of that holding, Comcast advances a narrow view of §1981's scope.  Section 1981's guarantee of "the same right . . . to make . . . contracts," Comcast urges, covers only the final decision whether to enter a contract, not earlier stages of the contract-formation process.

The Court devotes a page and a half to this important issue but declines to resolve it, as it does not bear on the choice of causation standards before us.  *Ante*, at 10–11.  I write separately to resist Comcast's attempt to cabin a

———————

*I have previously explained that a strict but-for causation standard is ill suited to discrimination cases and inconsistent with tort principles. *University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. 338, 383–385 (2013) (dissenting opinion).  I recognize, however, that our precedent now establishes this form of causation as a "default rul[e]" in the present context. *Id.*, at 347 (majority opinion).  See *ante*, at 3.  Respondent Entertainment Studios accepts that §1981 does not displace that rule, arguing only that a plaintiff's burden is lower at the pleading stage than it would be at summary judgment or at trial.  See Tr. of Oral Arg. 36–37.

"sweeping" law designed to "break down *all* discrimination between black men and white men" regarding "basic civil rights." *Jones* v. *Alfred H. Mayer Co.*, 392 U. S. 409, 432–433 (1968) (internal quotation marks omitted; emphasis in original).

Under Comcast's view, §1981 countenances racial discrimination so long as it occurs in advance of the final contract-formation decision. Thus, a lender would not violate §1981 by requiring prospective borrowers to provide one reference letter if they are white and five if they are black. Nor would an employer violate §1981 by reimbursing expenses for white interviewees but requiring black applicants to pay their own way. The employer could even "refus[e] to consider applications" from black applicants at all. Brief for United States as *Amicus Curiae* 21.

That view cannot be squared with the statute. An equal "right . . . to make . . . contracts," §1981(a), is an empty promise without equal opportunities to present or receive offers and negotiate over terms. A plaintiff hindered from enjoying those opportunities may be unable effectively to form a contract, and a defendant able to impair those opportunities can avoid contracting without refusing a contract outright. It is implausible that a law "intended to . . . secure . . . practical freedom," *Jones*, 392 U. S., at 431 (quoting Cong. Globe, 39th Cong., 1st Sess., 474 (1866)), would condone discriminatory barriers to contract formation.

Far from confining §1981's guarantee to discrete moments, the language of the statute covers the entirety of the contracting process. The statute defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." §1981(b). That encompassing definition ensures that §1981 "applies to all phases and incidents of the contractual relationship." *Rivers* v. *Roadway Express, Inc.*, 511 U. S. 298, 302 (1994). See also H. R. Rep. No. 102–40,

pt. 2, p. 37 (1991) ("The Committee intends this provision
to bar all racial discrimination in contracts. This list is in-
tended to be illustrative and not exhaustive."). In line with
the rest of the definition, the word "making" is most sensi-
bly read to capture the entire *process* by which the contract
is formed. American Heritage Dictionary 1086 (3d ed. 1992)
("The process of coming into being"); 9 Oxford English Dic-
tionary 250 (2d ed. 1989) ("the process of being made").

Comcast's freeze-frame approach to §1981 invites the
Court to repeat an error it has committed before. In 1989,
the Court "rea[d] §1981 not as a general proscription of ra-
cial discrimination in all aspects of contract relations, but
as limited to" certain narrow "enumerated rights." *Patter-
son* v. *McLean Credit Union*, 491 U. S. 164, 181. According
to *Patterson*, the right to "make" a contract "extend[ed] only
to the formation of a contract," and the right to "enforce" it
encompassed only "access to legal process." *Id.*, at 176–178.
The Court thus declined to apply §1981 to "postformation
conduct," concluding that an employee had no recourse to
§1981 for racial harassment occurring after the employ-
ment contract's formation. *Id.*, at 178–179.

Congress promptly repudiated that interpretation. In
1991, "with the design to supersede *Patterson*," Congress
enacted the expansive definition of "make and enforce con-
tracts" now contained in §1981(b). *CBOCS West, Inc.* v.
*Humphries*, 553 U. S. 442, 450 (2008). Postformation racial
harassment violates §1981, the amendment clarifies, be-
cause the right to "make and enforce" a contract includes
the manner in which the contract is carried out. So too the
manner in which the contract is made.

The complaint before us contains allegations of racial
harassment during contract formation. In their negotia-
tions, Entertainment Studios alleges, Comcast required of
Entertainment Studios a series of tasks that served no pur-
pose and on which Entertainment Studios "waste[d] hun-
dreds of thousands of dollars." App. to Pet. for Cert. 49a–

50a.  The Court holds today that Entertainment Studios must plead and prove that race was the but-for cause of its injury—in other words, that Comcast would have acted differently if Entertainment Studios were not African-American owned.  But if race indeed accounts for Comcast's conduct, Comcast should not escape liability for injuries inflicted during the contract-formation process.  The Court has reserved that issue for consideration on remand, enabling me to join its opinion.