*Lively v. WAFRA*

# United States Court of Appeals
# for the Second Circuit

August Term, 2020

(Argued: May 17, 2021          Decided: July 23, 2021)

Docket No. 20-2709

_____

FRANCIS P. LIVELY,

*Plaintiff-Appellant*,

v.

WAFRA INVESTMENT ADVISORY GROUP, INC., AKA WAFRA INC.,
FAWAZ AL-MUBARAKI,

*Defendants-Appellees*.

_____

Before:

WALKER, PARK, and NARDINI, *Circuit Judges*.

Francis Lively was terminated by his former employer, WAFRA Investment Advisory Group, Inc., for violating company policies prohibiting sexual harassment in the workplace. He sued, alleging that the stated basis for his termination was pretext and that the real reason he was fired was age discrimination and retaliation, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623. Defendants answered, submitting evidence of Lively's improper workplace conduct, and moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The United States District Court for the Southern District of New York (Oetken, *J.*) granted Defendants' motion,

dismissing Lively's age discrimination and retaliation claims. Although on a Rule 12(c) motion the district court should not have weighed the plausibility of competing allegations in the movant's pleading or considered evidence extrinsic to the non-movant's pleading, we affirm because Lively's complaint failed to plead that either his age or protected speech was a but-for cause of his termination.

PHILIP J. FURIA (William A. Brewer III, *on the brief*), Brewer, Attorneys & Counselors, New York, NY, *for Plaintiff-Appellant*.

BRETTE TANNENBAUM (Martin Flumenbaum, Edward G. Babbitt, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, *for Defendants-Appellees*.

PARK, *Circuit Judge*:

Francis Lively was terminated by his former employer, WAFRA Investment Advisory Group, Inc. ("WAFRA"), for violating company policies prohibiting sexual harassment in the workplace. He sued, alleging that the stated basis for his termination was pretext and that the real reason he was fired was age discrimination and retaliation, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623. Defendants answered, submitting evidence of Lively's improper workplace conduct, and moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The United States District Court for the Southern District of New York (Oetken, *J.*) granted Defendants' motion, dismissing Lively's age discrimination and retaliation claims. Although on a

Rule 12(c) motion the district court should not have weighed the plausibility of competing allegations in the movant's pleading or considered evidence extrinsic to the non-movant's pleading, we affirm because Lively's complaint failed to plead that either his age or protected speech was a but-for cause of his termination.

## I.  BACKGROUND

A.    Factual Background[1]

Lively had worked at WAFRA for 21 years before he was fired in 2018.  At the time of his termination, he was around 63 years old and served as WAFRA's Senior Managing Director of Real Estate.  Lively had been "a top performer" who "consistently exceeded WAFRA's expectations and was commended as an invaluable member and leader of the Real Estate Division."  Compl. ¶ 11.

On April 30, 2018, Lively received a letter from WAFRA's Director of Human Resources ("HR Director") suspending him without pay.  The next day, he received a letter from WAFRA's Chief Administrative Officer stating that he was being terminated for "violating company policies and the code of ethics prohibiting sex discrimination and harassment in the workplace."  *Id.* ¶ 12.  According to Lively's complaint, the sexual harassment allegation "was nothing

---

[1] The following facts are drawn from the complaint and construed in the light most favorable to the plaintiff. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

3

more than a pretext to fire him for being an older worker," and Sabine Kraut, the complainant, had "regularly and voluntarily solicited Lively's involvement in her personal and professional life," so he "had no reason to believe that their interactions were anything but welcomed by Kraut." *Id.* ¶ 16.

Lively's age discrimination claim is based mainly on comments made by his former supervisor, Fawaz Al-Mubaraki. After becoming Lively's supervisor around June 2017, Al-Mubaraki "began making negative comments about Lively's age." *Id.* ¶ 13. "In meetings with WAFRA executives and others, Al-Mubaraki stated that Lively (and other senior executives) was too old and that he would seek to replace Lively (and them) with younger counterparts." *Id.* At an after-hours gathering at WAFRA's offices on November 13, 2017, "Al-Mubaraki casually stated to Lively's son that WAFRA needed to replace older employees like his father with younger employees like Lively's son." *Id.* ¶ 14. Lively alleges that he was terminated as part of a "campaign to purge the company of elder workers." *Id.* ¶ 17.

Lively also claims that his termination was in retaliation for complaints he made in November 2017 about WAFRA's alleged pattern of age discrimination and Al-Mubaraki's comments. First, Lively alleges that he "complained to his

4

supervisor" about "the discriminatory pattern that was emerging" but was told that there was no such pattern. *Id.* ¶ 18. Second, Lively claims that he "reported Al-Mubaraki's discriminatory comments and stated plans" to the HR Director and WAFRA's Chief Operating Officer. *Id.* ¶ 19. The HR Director "expressed frustration that Al-Mubaraki continued to engage in inappropriate conduct," and the Chief Operating Officer "expressed forlorn acceptance of Al-Mubaraki's conduct." *Id.* (emphasis omitted).

Lively also claims to have discussed Al-Mubaraki's comments with Adel Mohamad Al-Bader, an executive from WAFRA's parent company who was present during the after-hours gathering where Al-Mubaraki made an age-related comment. Al-Bader advised Lively to "view Al-Mubaraki's statement as humorous, or as a joke." *Id.* ¶ 20. According to Lively, "[a]s a result of reporting Al-Mubaraki's misconduct, and consoling others enduring similar discrimination, WAFRA seized the opportunity to terminate Lively on the basis of a false accusation of sex discrimination and harassment." *Id.* ¶ 21.

B.    Procedural History

In April 2019, Lively sued WAFRA and Al-Mubaraki for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"),

5

29 U.S.C. § 623(a), (d).  He also brought age discrimination and retaliation claims under state and city law, as well as common-law tort and contract claims.  In an amended answer, Defendants denied that age discrimination or retaliation was the reason for Lively's termination.  According to Defendants, Kraut had reported Lively's "harassing and discriminating" behavior in April 2018.  After an investigation, WAFRA concluded that "[b]etween the time Mr. Lively became Ms. Kraut's supervisor in 2012 and his termination for cause on May 1, 2018, Mr. Lively repeatedly confessed his romantic feelings towards Ms. Kraut—and acknowledged that Ms. Kraut did not reciprocate his feelings—during conversations and through numerous cards and handwritten notes," and WAFRA thus "determined that it had no choice but to terminate Mr. Lively as a result of his misconduct."  Answer at 2.

In support of their answer, Defendants attached a number of exhibits.  In addition to WAFRA's employee handbook and the suspension and termination letters referenced in Lively's complaint, the answer attached the following: (1) a transcript of a conversation recorded by Kraut in which "Lively conceded that he had sustained unsolicited romantic feelings for Ms. Kraut for six years, that she had previously rejected and continued to reject such feelings, and that his feelings

negatively affected the way in which he treated employees and made it impossible for him to maintain an appropriate, professional relationship with Ms. Kraut," *id.*; (2) several handwritten love letters from Lively to Kraut; (3) a complaint filed by Kraut with the Equal Employment Opportunity Commission ("EEOC") in which she alleged "pervasive, continuous, and egregious" sexual harassment by Lively from 2012 until his termination in April 2018, as well as retaliation by WAFRA for reporting Lively's conduct, Answer Ex. N ¶ 10; and (4) a complaint filed by Kraut in the Southern District of New York on the same claims alleged in the EEOC complaint. Based on the answer and the attached exhibits, Defendants moved for judgment on the pleadings under Rule 12(c).

The district court granted Defendants' Rule 12(c) motion, dismissing Lively's ADEA claims and declining to exercise supplemental jurisdiction over the remaining city- and state-law claims. As to Lively's age discrimination claim, the court concluded that Lively's complaint was "devoid of facts plausibly alleging but-for causation." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, No. 19-cv-3257, 2020 WL 4038350, at *5 (S.D.N.Y. July 17, 2020). Specifically, the court identified only one nonconclusory allegation in the complaint: Al-Mubaraki's comment to Lively's son. The court further relied on two factual allegations from the answer:

7

(1) "less than a month separate[d] the claims of sexual misconduct made against Lively and his termination," and (2) Lively's replacement "is currently 66 years old—two years *older* than [Lively] is." *Id.* at *5–6 (cleaned up). According to the district court, these facts "undermined" "any inference of but-for causation." *Id.* at *5. Thus, the court held that "the only plausible conclusion to be drawn from the facts in the complaint, as supplemented with facts from the answer, is that Lively was terminated as a result of his violation of WAFRA's policies prohibiting sexual harassment and discrimination." *Id.* at *7.

As to the retaliation claim, the court found that Lively "failed to adequately plead that his termination would not have occurred in the absence of a retaliatory motive." *Id.* at *6 (cleaned up). The court found that the only nonconclusory allegation—Lively's reporting of Al-Mubaraki's comment to Lively's son—lacked temporal proximity to the termination and was undermined by Al-Mubaraki's intervening praise of Lively's work.

Lively timely appealed.

## II. LEGAL STANDARDS

A.     <u>Motion for Judgment on the Pleadings</u>

"We review *de novo* a district court's decision to grant a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Pleadings" include both the "complaint" and the "answer to [the] complaint." Fed. R. Civ. P. 7(a).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (cleaned up). "To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden*, 594 F.3d at 160 (cleaned up). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief . . . calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Lynch*, 952 F.3d at 75 (internal quotation

marks omitted).  In making this assessment, we "draw all reasonable inferences in [the plaintiff's] favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).

Like a motion under Rule 12(b)(6), a motion under Rule 12(c) may be filed before discovery is complete.  *See* Fed. R. Civ. P. 12(c) (permitting motion "[a]fter the pleadings are closed—but early enough not to delay trial").  Until both parties have an opportunity to test their evidence at summary judgment or trial, we must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party.

"[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019) (internal quotation marks omitted); *see also Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (explaining that dismissal under Rule 12(c) is appropriate for self-defeating complaints—*i.e.*, complaints "whose allegations show that there is an airtight defense").  Thus, where a "question [of fact] is in dispute, it [is] improper for the district court to answer it on a motion for dismissal on the pleadings." *Sheppard v. Beerman,* 18 F.3d 147, 151 (2d Cir. 1994); *see also* 5C Charles

Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2021) ("[J]udgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court."). Thus, a court may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations.

Rule 12(c) has limited usefulness today in light of both Rule 12(b)(6) and Rule 12(d), which requires a court to convert a motion under Rule 12(b)(6) or 12(c) into a motion for summary judgment whenever "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d).[2] Some

---

[2] Whether a party moves under Rule 12(b)(6) or Rule 12(c), the conversion provision of Rule 12(d) "serve[s] the identical purpose of preventing the circumvention of . . . Rule 56." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see Palin v. N.Y. Times Co.*, 940 F.3d 804, 810-11 (2d Cir. 2019) ("Rule 12(d) . . . presents district courts with only two options: (1) the court may exclude the additional material and decide the motion on the complaint alone or (2) it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." (internal quotation marks omitted)). Thus, as the Eleventh Circuit has clarified in *Horsley*, when a defendant moves for judgment on the pleadings, the court may review only those documents that would be appropriate to consider on a motion to dismiss. *See* 304 F.3d at 1134–35 (holding that the doctrine of "incorporation by reference" applies to motions under Rule 12(c) just as it applies to motions under Rule 12(b)(6) because, if it were otherwise, "the conversion clause of [Rule 12(d)] would be too easily circumvented and disputed documents attached to an answer would have to be taken as true at the pleadings stage").

commentators have described "the Rule 12(c) motion [as] little more than a relic of the common law and code eras." Wright & Miller, *supra*, § 1369; *see also id.* ("In light of the battery of pretrial motions available under the federal rules and the conversion provision in [Rule 12(d)], there probably is little need for retaining the judgment on the pleadings as a separate procedure for testing the sufficiency of the pleadings."); *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("[A] motion for judgment on the pleadings is the direct descendant of that ancient leper of the common law, the 'speaking demurrer.'").

B.    <u>ADEA Claims</u>

1.    *Age Discrimination*

The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a).[3] To prevail

---

[3] We analyze ADEA claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Although the Supreme Court has left open "whether the evidentiary framework of *McDonnell Douglas* is appropriate in the ADEA context," we "remain bound" by our precedent to apply the framework to ADEA claims. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (cleaned up). Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a prima facie case of age discrimination by showing "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (internal quotation marks omitted). Once a prima facie case is established, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for the adverse action, *McDonnell Douglas*, 411 U.S. at 802, which the plaintiff in turn may rebut by showing that "the employer's determination was in fact the result of racial discrimination," *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

on an ADEA age discrimination claim, it is not sufficient for a plaintiff to show "that age was simply a motivating factor" in the employer's adverse action. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009). Instead, "the ADEA's requirement that an employer took adverse action 'because of' age [requires] that age was the 'reason' that the employer decided to act." *Id.* at 176. Thus, to establish age discrimination under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.*

The Supreme Court has clarified recently that the but-for causation standard for discrimination claims applies not only at trial but at the pleading stage as well. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). "[T]he essential elements of a claim remain constant through the life of a lawsuit," and although "[w]hat a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial, . . . the legal elements themselves do not change." *Id.*[4] "[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Id.* Thus, to defeat a motion to dismiss or a motion for judgment on the pleadings,

---

[4] Although *Comcast* concerned a race discrimination claim under 42 U.S.C. § 1981, the Court's holding was not limited to this context; the decision broadly discusses the "'default' or 'background' rule[s]" of causation "when it comes to federal antidiscrimination laws." 140 S. Ct. at 1014 (citing *Gross*, 557 U.S. at 176–77).

an ADEA plaintiff must plausibly allege that he would not have been terminated but for his age.[5]

#### 2. *Retaliation*

The ADEA also includes an antiretaliation provision that makes it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by [section 623 of the ADEA]." 29 U.S.C. § 623(d).[6] Like the ADEA's antidiscrimination provision, the ADEA's antiretaliation provision uses the word "because," indicating that a but-for causal relationship is required to state a claim. *See Gross*, 557 U.S. at 176.

---

[5] Application of the but-for causation standard at the pleading stage is not affected by the *McDonnell Douglas* burden-shifting framework. "Under *McDonnell Douglas*'s terms, . . . only the burden of production ever shifts to the defendant, never the burden of persuasion," and so *McDonnell Douglas* "provide[s] no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim." *Comcast*, 140 S. Ct. at 1019; *see Gross*, 557 U.S. at 177 ("[U]nder § 623(a)(1), the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action.").

Nor do our decisions in the Title VII context applying a more lenient standard at the pleading stage—even assuming that such a standard remains appropriate after *Comcast*—affect the legal standard here. *See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (holding that a Title VII plaintiff "need only" plead enough facts to "give plausible support to a minimal inference of discriminatory motivation"). The antidiscrimination provisions in the ADEA and Title VII are "materially different," and our "interpretation of the ADEA is not governed by Title VII decisions." *Gross*, 557 U.S. at 173, 175.

[6] To establish a prima facie case of retaliation under the ADEA, "a plaintiff must show (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Bucalo*, 691 F.3d at 129 (internal quotation marks omitted).

In *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), the Supreme Court extended *Gross*'s but-for causation requirement to Title VII retaliation claims. "Given the lack of any meaningful textual difference between the text in [Title VII's antiretaliation provision] and the [antidiscrimination provision] in *Gross*, the proper conclusion . . . is that Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* at 352. Similarly, there is no meaningful difference between the antiretaliation provisions of Title VII and the ADEA.[7] Thus, ADEA retaliation claims likewise require "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. And under *Comcast*, the but-for causation standard applies at the pleading stage as well. *See* 140 S. Ct. at 1014.

---

[7] *Compare* 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."), *with* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").

## III. DISCUSSION

A.      Motion for Judgment on the Pleadings

Lively contends that the district court misapplied the standard for deciding a motion for judgment on the pleadings. We agree, but nonetheless affirm because Lively's complaint failed to state a plausible claim even without considering Defendants' answer or the evidence submitted with it.

First, the district court erred by considering the factual allegations in the answer and weighing their relative plausibility against the allegations in the complaint. Specifically, the court determined that "the only plausible conclusion to be drawn from the facts in the complaint, as supplemented with facts from the answer, is that Lively was terminated as a result of his violation of WAFRA's policies prohibiting sexual harassment and discrimination." *Lively*, 2020 WL 4038350, at *7.

On a Rule 12(c) motion, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*, 952 F.3d at 75. And we draw all reasonable inferences in the non-movant's favor. *See Johnson*, 569 F.3d at 43. Here, the district court should

16

not have "supplemented" its assessment of the plausibility of Lively's allegations on a Rule 12(c) motion with facts from the answer.

Second, the district court erred by relying on several documents attached to Defendants' answer in deciding their Rule 12(c) motion without converting it into a motion for summary judgment as required by Rule 12(d). Specifically, the district court relied on a transcript of a conversation between Lively and Kraut and on multiple letters that Lively allegedly gave to Kraut during his employment. *Lively*, 2020 WL 4038350, at *2. While courts may on a Rule 12(c) motion—just as on a Rule 12(b)(6) motion—consider extrinsic material that the complaint "incorporate[s] by reference," that is "integral" to the complaint, or of which courts can take judicial notice, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), the documents relied on here were neither incorporated by reference in nor integral to the complaint, *see id.* (emphasizing that a document is "integral to the complaint" only if the plaintiff himself "reli[ed] on the terms and effect of [the] document in drafting the complaint" (cleaned up)). Although the district court may have taken judicial notice that Kraut filed complaints with the EEOC and in federal court, *see Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (taking judicial notice of authentic trial transcript on Rule 12(c) motion), the court erred to the

extent that it accepted Kraut's allegations to be true, *see Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) (explaining that treating an exhibit as part of the pleading does not require accepting the contents of the exhibit as true).

Defendants argue that the court was correct to draw from the answer and its exhibits, relying on *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011), for the proposition that "[o]n a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *Id.* at 422 (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). But this language must be understood in the context of our earlier pronouncement that, "[i]n deciding a Rule 12(c) motion, we employ the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." *Hayden*, 594 F.3d at 160 (cleaned up). That standard, of course, requires us to "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." *Id*.

There is a difference between motions under Rules 12(b)(6) and 12(c) that limits the quoted language from *L-7 Designs*. Whereas only defendants move to dismiss complaints for failure to state a claim under Rule 12(b)(6), both plaintiffs and defendants can move for judgment on the pleadings under Rule 12(c). *See,*

18

*e.g.*, *Dist. No. 1*, 933 F.3d at 760–61. When a plaintiff is the movant, courts must accept all factual allegations in the answer and draw all reasonable inferences in favor of the defendants, who are the non-movants in that scenario. *See id.* at 761 ("[W]hen the plaintiff moves for judgment on the pleadings, the defendant's 'denials and allegations of the answer which are well pleaded must be taken as true.'" (quoting *Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 51 (1941))). And in such a posture, courts should consider the answer, along with any attached written instruments or other matters of which courts can take judicial notice.

Our statement in *L-7 Designs* about the various items courts may consider encompasses the full range of materials, but it does not mean that courts may weigh all such materials at once when deciding a motion on the pleadings. Unless a court is considering extrinsic material that is incorporated by reference into the complaint or on which the complaint relies or other matters of which the court can take judicial notice, it should remain within the non-movant's pleading when deciding both Rule 12(c) and 12(b)(6) motions. And where a court does draw from such extrinsic material, it must construe all reasonable inferences in the non-movant's favor. *See Dist. No. 1*, 933 F.3d at 760–63; *see also Chambers*, 282 F.3d at 152–53.

Thus, on a motion for judgment on the pleadings, courts may consider all documents that qualify as part of the non-movant's "pleading," including (1) the complaint *or* answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice. *See Chambers*, 282 F.3d at 152–53 (describing documents "deemed" to be part of a complaint on a motion to dismiss). But a court may not resolve the motion by weighing the plausibility of competing allegations or by considering evidence extrinsic to the non-movant's pleading without converting the motion to one for summary judgment.

B.    Age Discrimination

Applying the standards discussed above, we affirm the district court's conclusion that Lively failed to plausibly allege that his age was the but-for cause of his termination. To start, we do not credit Lively's vague and conclusory allegation that he was victim to a "campaign to purge [WAFRA] of elder workers." Compl. ¶ 17. Although Lively provides the names and positions of several executives who were fired or otherwise forced out, he offers no details that would support any inference of age discrimination, such as the executives' ages or the dates and stated reasons for their terminations. This vague allegation thus lacks

facial plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

We are left with Lively's allegations concerning Al-Mubaraki's age-related comments. First, in or around June 2017, Al-Mubaraki allegedly stated in meetings "that Lively . . . was too old and that he would seek to replace Lively . . . with [a] younger counterpart[]." Compl. ¶ 13. Second, in November 2017, Al-Mubaraki allegedly "stated to Lively's son that WAFRA needed to replace older employees like his father with younger employees like Lively's son." *Id.* ¶ 14.

To state a claim that his termination occurred "because of [his] age," 29 U.S.C. § 623(a)(1), Lively must plead facts plausibly suggesting "that age was the 'reason' that [WAFRA] decided to act," *Gross*, 557 U.S. at 176. Stray age-related remarks are insufficient to raise an inference of discriminatory motive unless they "(1) [were] made repeatedly, (2) drew a direct link between [discriminatory] stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the decision to terminate." *Naumovski v. Norris*, 934 F.3d 200, 216 n.47 (2d Cir. 2019) (cleaned up).

21

Here, the complaint fails to allege a "but-for" causal connection between Al-Mubaraki's comments and Lively's termination. First, Al-Mubaraki made only two remarks, and Lively provides details for only one of those remarks. More significantly, Lively has failed to raise a reasonable inference that there is "a direct link" between the age-related remarks and his termination. *Id.* Al-Mubaraki's comments were separated by several months and occurred five and ten months before Lively's termination. As the district court explained, "[t]he gap between [Al-Mubaraki's] alleged comment[s] and the subsequent termination is significant because stray remarks are rarely given great weight, particularly if they were made temporally remote from the date of the decision." *Lively*, 2020 WL 4038350, at *5 (cleaned up); *see also Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (explaining that stray remarks, "*without more*," "do not constitute sufficient evidence to make out a case of employment discrimination"). Moreover, Lively has alleged no facts concerning "other indicia of discrimination" that would make Al-Mubaraki's remarks "bear a more ominous significance." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019) (internal quotation marks omitted). To the contrary, the complaint alleges that Lively was promoted and received positive feedback from Al-Mubaraki after Al-Mubaraki made the discriminatory remarks.

22

Nor does Lively allege that Al-Mubaraki played any role, much less "a substantial role[,] in the decision to terminate." *Naumovski*, 934 F.3d at 216 n.47 (internal quotation marks omitted). Instead, the complaint states that WAFRA's HR Director and Chief Administrative Officer handled his termination. "[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross*, 557 U.S. 167.

Finally, Lively's own complaint describes the stated reason for his termination—*i.e.*, "violating company policies and the code of ethics prohibiting sex discrimination and harassment in the workplace." Compl. ¶ 12. Even without considering the truth of the allegations contained in Kraut's EEOC and federal court complaints, the district court could properly have taken judicial notice of the fact that those complaints had been filed. *See Lively*, 2020 WL 4038350, at *3. Moreover, Lively's termination letter, which was attached as an exhibit to Defendants' answer, was also within the universe of materials the district court could consider on a Rule 12(c) motion as a document incorporated by reference

23

into the complaint. *See Chambers*, 282 F.3d at 152–53. In light of that factual context, Lively's conclusory narrative that the sexual harassment allegation "was nothing more than a pretext to fire him for being an older worker" is implausible. Compl. ¶ 16. Thus, on the basis of Lively's complaint and drawing all inferences in his favor—and not based on Defendants' answer or the materials attached to it (other than materials of which the court could take judicial notice)—we affirm the district court's dismissal of Lively's age discrimination claim.

C.     Retaliation

Lively's retaliation claim fails for similar reasons. He alleges, in essence, that he complained to WAFRA about Al-Mubaraki's comments but received no response and was terminated five months later in retaliation. Even if true, Lively has failed to plead but-for causation, which requires "that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*, 801 F.3d at 90). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Id.*

Here, Lively has alleged no facts suggesting that the reporting of Al-Mubaraki's comments was the "reason" for his termination. *Nassar*, 570 U.S. at

24

352. He alleges no evidence (direct or circumstantial) of retaliatory motive based on his reporting of Al-Mubaraki's comments. Instead, he "has simply asserted in conclusory fashion that 'as a result of reporting Al-Mubaraki's misconduct WAFRA seized the opportunity to terminate Lively based on the basis of a false accusation of sex discrimination and harassment.'" *Lively*, 2020 WL 4038350, at *6 (quoting Compl. ¶ 21) (alterations omitted). Nor has Lively alleged temporal proximity between his reports and his termination sufficient to raise a plausible inference of causation. *See Duplan*, 888 F.3d at 625. Thus, Lively has failed to plead a plausible claim of retaliation under the ADEA, and we affirm the district court's dismissal of that claim.

**IV. CONCLUSION**

For the reasons set forth above, the district court's judgment is affirmed.